## THE S. B. HUME.

## THE PENNSYLVANIA.

### McLAREN and others, Owners, etc., v. THE PENNSYLVANIA.

*(Circuit Court, E. D. Pennsylvania. April 7, 1885.)*

COLLISION—MID-OCEAN—MUTUAL FAULT—STEAMER AND SCHOONER.
    The steamer in this case being guilty of negligence in running at full speed on a dark and foggy night, and the schooner also being negligent in not having on board and displaying a torch, *held*, that only half damages should be allowed, and that the costs should be apportioned.

Appeal in Admiralty. See S. C. 12 FED. REP. 914, and 15 FED. REP. 814.

*J. Warren Coulston*, for libelants.

*M. P. Henry*, for respondent.

MCKENNAN, J. On the night of July, 23, 1878, the schooner S. B. Hume was on a voyage from New Brunswick to Gloucester, England,

and was sailing on a course E. S. E., and in an eastwardly direction. The night was dark, and the atmosphere thick and foggy. The wind was south-west strong, and the speed of the schooner was about seven knots an hour. She had all the required lights properly set and burning; a starboard watch was on deck, under the command of the second officer; a competent lookout was on duty; and a fog-horn was blown at proper intervals. Such was the condition of the atmosphere that vessels could not see each other at a greater distance than one-fourth of a mile. When the schooner observed the mast-head light of the steamer the vessels were in close proximity, and the helm of the schooner was put hard a-port. This caused her to luff up, and changed her course more towards the south. The course of the steamer was W. by N., and its general direction was westwardly. She was under "full speed bells," making between nine and ten miles an hour, when the red light of the schooner was first seen about one point on the starboard bow, and about four lengths of the ship distant. She then reversed at full speed, with her helm hard a-port. But these maneuvers were ineffective to avoid the collision, the stern of the steamer striking the schooner twice on her port side, thereby causing her to fill with water, and rendering the vessel and her cargo a total loss. The collision occurred about midnight, in mid-ocean. The schooner was not provided with a torch-light, and therefore did not display any at any time while the vessels were approaching each other.

The facts thus found are, in my judgment, decisive of the merits of this case, and it is not, therefore, deemed necessary to burden the record with others which might be deduced from the voluminous evidence, and which, if not of unimportant pertinency, are at least indecisive in their effect. The steamer was in default in pursuing her voyage at a rate of speed clearly excessive, under the circumstances. The night was dark and the atmosphere thick with fog, so that approaching vessels could not see each other until they were in dangerous proximity. Such was the case here, as neither vessel saw the other until they were so close as to render a collision almost unavoidable, although both of them seem to have employed the customary means of giving warning of their approach. With existing conditions, to move under "full speed bells" at the rate of nine or ten miles an hour was manifestly incautious, if not positively perilous; hence a reduction of speed to a moderate rate was a primary and imperative duty on the part of the steamer. If this had been observed, the collision would not have occurred. The master of the steamer himself admits this in his testimony, for he says that with a speed of five or six miles an hour he could have avoided the collision. But certainly, with a reduced rate of speed, the vessels would have been so far distant from each other that a collision could not have occurred when and as it did. And this fundamental fault of the steamer is not averted or mitigated by anything in the evidence.

Is any contributory fault imputable to the schooner? The law imperatively required her to have on board a torch-light, and to light and display it to an approaching vessel. She had no such torch, or, if she had, none was exhibited, and in this she was confessedly derelict. She was therefore presumptively guilty of contributory negligence. Nor is this presumption repelled by the suggestion that the red light of the schooner was seen by the steamer before, or as soon as, a torch-light could have been seen by the latter. If the torch-light had been displayed when the mast-head light of the steamer was first sighted, her officers would have seen the glare of its flash before the red light came into view, and in time, probably, to determine the direction of the schooner, and thus have aided the officers of the steamer in averting the collision, either by reversing the engine or by altering her course. Both vessels having been thus culpable, there can be a decree for only half damages in favor of the schooner.

In the district court the costs were apportioned, and this is earnestly opposed here. With the conclusion reached by the learned judge of the district court I am entirely satisfied, and I therefore approve and adopt the opinion delivered by him on that question. The disallowance of one-half the damages sustained by the schooner is due to her culpable negligence, and is therefore, to that extent, practically an adjudication against her. That she should be subject to the usual consequences of an adverse judgment, in whatever form it may be rendered, seems to me to be consonant to both reason and justice. So it seems to have been regarded in this district for many years, and by the supreme court in *The America*, 92 U. S. 432.

A decree will therefore be entered in favor of the libelant for $7,684.13, with interest from January 24, 1883; the costs to be taxed, apportioned, and paid as decreed by the district court.