THE OUR FRIEND.

THE MAJESTIC.

(District Court, E. D. Pennsylvania. December 27, 1905.)

No. 34.

COLLISION—TUG AND CATBOAT—VIOLATION OF RULES.

 A steam tug was proceeding down the Delaware river on a dark night without a lookout, when a collision occurred with a catboat which was sailing up the river on a tack toward the New Jersey shore, and was not seen by the tug until too late to avoid collision. The catboat carried

a white light, but was not supplied with a colored lantern, as required by article 7, § 3, of the navigation rules (Act Aug. 19, 1890, c. 802, 26 Stat. 322 [U. S. Comp. St. 1901, p. 2866]). Those in charge knew that they were not seen by the tug when 600 feet distant, and that a collision must result if both vessels kept their courses, but did not change the boat's course. *Held*, that both vessels were in fault; the tug for failing to keep a lookout and to keep out of the way as required by article 20, 26 Stat. 327 [U. S. Comp. St. 1901, p. 2870], and the catboat for failing to carry the prescribed light or to take measures to avoid the collision as required under the special circumstances by article 27, 26 Stat. 327 [U. S. Comp. St. 1901, p. 2871].

In Admiralty. Suit for collision.
See 131 Fed. 395.

Joseph Hill Brinton, for libelant.
Willard M. Harris, for respondent.

HOLLAND, District Judge. The libelant in this case seeks to recover damages sustained by him as owner of a catboat, and for claims assigned to him against the steam tug Majestic, the result of a collision between these boats on the Delaware river, a little below the old Point House, near the Pennsylvania side, on a dark and somewhat cloudy night, at about 10:30 o'clock, May 30, 1904. Frederick S. Heard, the owner of the catboat, and some friends, had been down the river to Thompson's Point spending Saturday and Sunday, and were returning home, having left two of the party at Washington Park. They were proceeding up the river, under sail, on what is termed the "long leg of the tack," when within a few feet of the Pennsylvania shore the boat started on her port tack and continued across the river toward the Jersey shore in a direction little south of east. Immediately after the catboat had turned on the port tack, the captain thereof saw the Majestic coming around the Greenwich coal piers down the river, about two squares away. The Majestic was seen by the party for 10 minutes before the collision occurred, and came straight on in a manner which indicated to the party in the sailing boat that they had not been sighted. When the tug was within 600 feet of the catboat, the captain and owner of the catboat were convinced that, if both vessels kept on their course, a collision would result. The Majestic had no lookout and did not discover the presence of the catboat until the engineer, by accident, stepped out upon the deck of the Majestic and then stooped down and saw a sail ahead and called to the man at the wheel, "A boat ahead!" By this time they were within 20 feet of each other, and the Majestic reversed her engine, so that when the collision occurred she was almost at a standstill. The catboat had a white light on her jib stay, about 9 feet above the water. This, however, had not been seen by any one on the Majestic, and there is much dispute in the evidence, as usual, as to whether this light was burning. The catboat also had a bicycle lamp, which the party claimed had been lighted and waived to the Majestic as the boats approached each other, but it was afterward discovered that there was no oil in this lamp and could not have been lighted. The catboat did not have at hand a lantern with a green glass on one side and a red glass on the other,

to be exhibited at sufficient time to prevent a collision on the approach of other vessels, as is required by article 7, § 35 of the rules of navigation (Act August 19, 1890, c. 802, 26 Stat. 322 [U. S. Comp. St. 1901, p. 2866]), although the owners admitted they had such a light at home, but it was not upon their boat at the time of the accident.

It is true that "the nautical rules require that, when a steamship and sailing vessel are approaching each other from opposite directions or on intersecting lines, the steamship, from the moment the sailing vessel is seen, shall watch with the highest diligence her course and movements, so as to be able to adopt such timely measures of precaution as will necessarily prevent the two vessels from coming in contact. * * * It is the duty of the steamer to keep out of the way of the sailing vessel, giving her a wide berth, and so avoiding not only the collision, but the risk of collision." Merchants' Transit Co. v. Hopkins, 108 Fed. 890, 48 C. C. A. 128.

Article 20 (26 Stat. 327 [U. S. Comp. St. 1901, p. 2870]), of the rules provides:

"When a steam vessel and sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel."

Article 27 (26 Stat. 327 [U. S. Comp. St. 1901, p. 2871]), provides:

"In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger."

The party in charge of the catboat knew they had not been seen by those in charge of the Majestic when they were 600 feet away, and knew, if they both kept on their course, a collision would result. They could have luffed up in the wind and prevented this accident, but they kept on their course, insisting upon their right of way in face of their failure to exhibit the required light, and the special circumstances which we think in this case rendered a departure from the rules necessary in order to avoid immediate danger.

In view of the fact that the catboat did not carry such a light, as is required by the rules of navigation, and the failure of the Majestic to station a lookout as a matter of precaution on a dark night, as they should have done, we conclude that both are responsible for this collision, and the damages should be equally divided between the libelant and respondent, and each party should pay one-half of the aggregate taxable costs. The Pennsylvania (D. C.) 15 Fed. 814, Id. (C. C.) 24 Fed. 296.

There is some evidence submitted as to the damage to the boat and the claims for wearing apparel, which it is claimed have been assigned to the libelant, but there is nothing to show when and under what circumstances they were assigned, and the evidence is so indefinite that the court cannot arrive at any satisfactory conclusion as to the amount of loss.

Let a decree be entered in accordance with this opinion, and upon the application of either party a commissioner will be appointed to assess damages.